UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| VEDA MAE DOWNING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case number 4:10cv1509 TCM |
| | ) | |
| CHARLES R. DWYER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

<u>MEMORANDUM AND ORDER</u>

This matter is before the Court on a motion to dismiss the second amended complaint
[Doc. 38] filed by Charles R. Dwyer, Steven D. Long, George Lombardi, Johnny L. Williams,
and Alex Clinton (collectively, Defendants).[1]

BACKGROUND

By her three-count second amended complaint, Veda Mae Downing (Plaintiff) seeks
monetary relief from Defendants under 42 U.S.C. § 1983 for their allegedly deliberate
indifference to her son's serious medical needs resulting in his death while he was in
Defendants' custody (Count I),[2] under Missouri's wrongful death statute for her son's death
while in Defendants' custody (Count II), and for Defendants' allegedly intentional infliction
of emotional distress due to Defendants' handling of her son's body after his death (Count III).
(Pl. Compl. [Doc. 37].)  Plaintiff's son had epilepsy and was "a member of the Cherokee

---

[1]  The case is before the undersigned United States Magistrate Judge by written consent of the
parties.  <u>See</u> 28 U.S.C. § 636(c).

[2]  Although the date of Plaintiff's son's death is not mentioned in the second amended complaint, it is
mentioned as occurring "on or about August 11, 2005," in Plaintiff's original pro se complaint.  (<u>See</u> Pl. Original
Compl. at 1 [Doc. 1].)

Nation, a Native-American community."  (Pl. Second Am. Compl. ¶¶ 9, 13.)  During the relevant time, Defendant Lombardi was the Director of the Missouri Department of Corrections (MoDOC), Defendant Long was the Associate Director of the MoDOC, Defendant Dwyer was the Superintendent of Southeast Correctional Center (SECC) where Plaintiff's son was in custody, and Defendants Williams and Clinton were correctional officers at the SECC.

By their motion to dismiss, Defendants seek dismissal of the second amended complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that complaint fails to state a claim upon which relief may be granted.  More specifically, Defendants urge that the allegations of the second amended complaint do not comply with Rules 8(a) and 10(b); that the respondeat superior theory of liability bars the claims against Defendants Dwyer, Long, and Lombardi; and that the allegations are insufficient to overcome the defense of qualified immunity.

## DISCUSSION

When ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must take as true the alleged facts and determine whether they are sufficient to raise more than a speculative right to relief.  **Bell Atl. Corp. v. Twombly**, 550 U.S. 544, 555-56 (2007).  The Court does not, however, accept as true any allegation that is a legal conclusion.  **Ashcroft v. Iqbal**, 556 U.S. 662, 129 S. Ct. 1937, 1949-50 (2009).  The complaint must have "'a short and plain statement of the claim showing that the [plaintiff] is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  **Twombly**, 550 U.S. at 555 (quoting Fed. R. Civ. P. 8(a)(2) and then Conley v. Gibson, 355

U.S. 41, 47 (1957), abrogated by Twombly, supra); see also **Gregory v. Dillard's Inc.**, 565 F.3d 464, 473 (8th Cir.) (en banc), cert. denied, 130 S. Ct. 628 (2009).  While detailed factual allegations are not necessary, a complaint that contains "labels and conclusions, and a formulaic recitation of the elements of a cause of action" is not sufficient.  **Twombly**, 550 U.S. at 555; accord **Iqbal**, 129 S.Ct. at 1949.   The complaint must set forth "enough facts to state a claim to relief that is plausible on its face."  **Twombly**, 550 U.S. at 570; accord **Iqbal**, 129 S. Ct. at 1949; **Braden v. Wal-Mart Stores, Inc.**, 588 F.3d 585, 594 (8th Cir. 2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  **Iqbal**, 129 S. Ct. at 1949.  If the claims are only conceivable, not plausible, the complaint must be dismissed.  **Twombly**, 550 U.S. at 570; accord **Iqbal**, 129 S. Ct. at 1950-51.  In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible."  **Braden**, 588 F.3d at 594.

Construing the factual allegations of the second amended complaint as true, the allegations reveal the following: Defendants "knew that Plaintiff's son suffered from [epilepsy and had] severe and regular seizures" through Plaintiff's telephone calls; an "Epilepsy" notation on Plaintiff's son's "ID card," which was in the possession of the SECC; and notification from Plaintiff's son and other inmates.  (Pl. Second Am. Compl. ¶¶ 13-15, 24-25 [Doc. 37].)  Additionally, Plaintiff's son had been "recently transferred from another prison [to the SECC] because th[e other] facility was not air conditioned and the summer heat exacerbated [Plaintiff's son's] Epilepsy, causing more frequent and severe seizures."  (Pl.

Second Am. Compl. ¶ 16 [Doc. 37].)  "Despite knowing all this," Defendants "denied that Plaintiff's son had Epilepsy" and "refused to give Plaintiff's son his anti-seizure Epilepsy medication for at least three straight days," during which time "Plaintiff's son was calling out to the guards asking for his medication."  (Id. ¶¶ 17-19.)  Defendants Dwyer, Long, and Lombardi received repeated telephone calls from Plaintiff, who "le[ft] messages [at their offices] and request[ed] that they intervene and make sure that Plaintiff's son got his seizure medication."  (Id. ¶ 20.)  "Plaintiff's son suffered severely without his medication, lapsing into Epileptic Grand Mal seizures[,] . . . suffering pain and emotional distress," and "d[ying after falling unconscious] in solitary confinement."  (Id. ¶¶ 9, 21, 22.)

        After his death, Plaintiff's son's body was taken to a local hospital, where an emergency room doctor asked to see the body and was allowed to make only a "limited examination," noting that the head and neck area was "atraumatic" or "without injury."  (Id. ¶¶ 40-43.)  "Hospital employees took the body to the morgue where an autopsy was performed in violation of Cherokee National law and ethical guidelines."  (Id. ¶ 41.)  "Defendant Dwyer informed Plaintiff that results of the autopsy were that her son had committed suicide by hanging himself in his cell."  (Id. ¶ 42.)  Plaintiff was also informed by "City officials . . . that they could not find her son's brain after the autopsy."  (Id. ¶ 45.)  "Defendant Dwyer refused to allow Plaintiff to view the body or to identify the body of her son," "refused to allow Plaintiff to have her own autopsy performed to determine the cause of death," "repeatedly demanded that [Plaintiff] arrange to transport her son's body on Saturday," and "threatened [Plaintiff] in a verbally abusive manner that her son's body was still his property and that he would throw it in an unmarked grave if she did not transport the body that very day, a

- 4 -

Saturday."  (<u>Id.</u> ¶¶ 46-49.)   "Plaintiff saw her son's body at his funeral and ripped and pulled at the clothing around his neck to search for the marks of suicide by hanging, as the Defendants alleged her son died, but did not see any marks on her son's neck."  (<u>Id.</u> ¶ 50.)

In support of their motion, Defendants first urge the Court to dismiss the § 1983 claim for Plaintiff's failure to comply with Rules 8(a)[3] and 10(b),[4] and to exercise its discretion to dismiss the two supplemental state claims based upon the dismissal of the § 1983 claim.  In particular, Defendants argue that "the conduct of each [D]efendant that violated [P]laintiff's rights" is not set forth in separate paragraphs, but instead the complaint "lumps several defendants together for purposes of liability," contrary to Rule 10(b).  The Court will not grant the motion on this ground because, while it is true that Plaintiff does not make allegations against each Defendant in separate paragraphs, the complaint contains numbered paragraphs that sufficiently set forth a facially plausible § 1983 claim against each Defendant for their allegedly deliberate indifference to a serious medical need of Plaintiff's son.

---

[3]  Rule 8(a) provides that

A pleading that states a claim for relief must contain:

 (1)  a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

 (2)  a short and plain statement of the claim showing that the pleader is entitled to relief; and

 (3)  a demand for the relief sought, which may include relief in the alternative or different types of relief.

[4]  Rule 10(b) provides, in relevant part, that "[a] party must state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances."

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that the defendant acted under color of state law and that the defendant's challenged conduct deprived the plaintiff of a right protected by the United States constitution. **Van Zee v. Hanson**, 630 F.3d 1126, 1128 (8th Cir. 2011); **Andrews v. City of W. Branch, IA**, 454 F.3d 914, 918 (8th Cir. 2006). Plaintiff alleges that each Defendant acted under color of state law as MoDOC officials or SECC guards when they took care of Plaintiff's son.

"'Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment,'" and states a claim under § 1983. **Estelle v. Gamble**, 429 U.S. 97, 104, 105 (1976) (citation omitted); accord **Langford v. Norris**, 614 F.3d 445, 460 (8th Cir. 2010). "To show the prison officials failed to provide adequate medical treatment, [the plaintiff] must prove '(1) [the prisoner] suffered from an objectively serious medical need, and (2) defendants knew of the need yet deliberately disregarded it.'" **Holden v. Hirner**, 2011 WL 6004085, at *4 (8th Cir. Dec. 2, 2011) (No. 10-3656) (quoting Hartsfield v. Colburn, 371 F.3d 454, 457 (8th Cir. 2004)). A serious medical need is "'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" **Id.** (quoting Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997)).

Non-medical correctional officials may be liable for their deliberate indifference to a prisoner's serious medical needs when they "intentionally deny[] or delay[ a prisoner's] access to medical care or intentionally interfer[e] with the treatment once prescribed." **Estelle**, 429 U.S. at 104-05 (footnotes omitted). A supervisory prison official "may be held liable under the Eighth Amendment if he knows that an inmate faces a substantial risk of serious harm and

- 6 -

disregards that risk by failing to take reasonable measures to abate it."  **Schaub v. VonWald**, 638 F.3d 905, 916 (8th Cir. 2011) (addressing the liability of the director of a detention facility).  Whether the prison official has the requisite knowledge is a question of fact. **Farmer v. Brennan**, 511 U.S. 825, 842 (1994).  The knowledge of a prison official "may be inferred from circumstantial evidence, or from the very fact that the risk was obvious." **Schaub**, 638 F.3d at 916.

The allegations of Plaintiff's second amended complaint state that Defendants knew of Plaintiff's son's epilepsy, a serious medical need; knew of Plaintiff's son's need for his epilepsy-related medication in the days before his death; and deliberately disregarded that need.  Defendants Lombardi, Long, and Dwyer, who are MoDOC officials, allegedly learned of Plaintiff's son's serious medical need and his inability to receive his epilepsy-related medication through Plaintiff's telephone calls.  Defendants Clinton and Williams, the SECC guards who cared for Plaintiff's son, allegedly learned of Plaintiff's son's need for epilepsy-related medication from Plaintiff's son and other SECC prisoners.  While these § 1983 claims are subject to further development, at this point they are stated plausibly enough to avoid dismissal under Rule 12(b)(6) based on Plaintiff's non-compliance with Rules 8(a) and 10(b).

Next Defendants argue that the § 1983 claims against Defendants Dwyer, Long, and Lombardi should be dismissed because those defendants cannot be held liable on a theory of respondeat superior, but must be personally involved in or have actual knowledge of the constitutional deprivation, and no such participation or knowledge is alleged.

A supervisory prison official "cannot be held liable under § 1983 on a theory of respondeat superior."  **Langford**, 614 F.3d at 460 (citing Choate v. Lockhart, 7 F.3d 1370,

1376 (8th Cir. 1993)).  "Supervisors can, however, 'incur liability . . . for their personal involvement in a constitutional violation, or when their corrective inaction amounts to deliberate indifference to or tacit authorization of the violative practices.'"  **Id.** (quoting Choate, 7 F.3d at 1376).   If a correctional officer knows that an inmate's "serious medical needs [a]re not being adequately treated yet remain[s] indifferent, he may be held personally liable" under § 1983.  **Id.** at 461.

There is no indication in the allegations of the second amended complaint that these three Defendants' § 1983 liability is based on their supervision of others, or on a theory of respondeat superior; instead, the allegations base the § 1983 claim against these Defendants on their failure to take reasonable action in response to their knowledge, through Plaintiff's telephone calls, of Plaintiff's son's need for and inability to attain epilepsy-related medication in the days before his death at SECC.  While further development of the record is necessary to ascertain whether or not Plaintiff will be able to establish these three Defendants' liability under the circumstances of this case, the allegations of Plaintiff's § 1983 claim are facially plausible enough to withstand Defendants' motion to dismiss on the ground the allegations rely on a respondeat superior theory of liability.  See, e.g., **Cooper v. Schriro**, 189 F.3d 781, 783-84 (8th Cir. 1999) (prisoner stated a claim against a health care administrator for deliberate indifference to serious medical and dental needs when he alleged he notified the defendant regarding painful dental problems and was refused treatment).

Finally, Defendants urge the second amended complaint should be dismissed because they enjoy qualified immunity from suit.

Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." **Harlow v. Fitzgerald**, 457 U.S. 800, 818 (1982).  To defeat qualified immunity, a plaintiff must demonstrate that the official's actions violated a statutory or constitutional right and that the right was clearly established at the time of the violation.  **McRaven v. Sanders**, 57 F.3d 974, 980 (8th Cir. 2009).  Importantly, an official's entitlement to qualified immunity "turns on whether the [official] knew of the serious medical need and w[as] deliberately indifferent to it."  **Krout v. Goemmer**, 583 F.3d 557, 568 (8th Cir. 2009).

As noted earlier, Plaintiff's allegations indicate that each Defendant knew about Plaintiff's son's epilepsy and need for epilepsy-related medication and failed to provide the required medication in the days before he died.  Therefore, Plaintiff alleges a constitutional violation that was clearly established at the relevant time, and the second amended complaint's allegations are plausible enough to withstand Defendants' motion to dismiss based on qualified immunity.

Because Plaintiff's § 1983 claim remains pending, the Court will not exercise its discretion to dismiss Plaintiff's two state law claims, which are pursued under this Court's supplemental jurisdiction.

Accordingly,

- 9 -

**IT IS HEREBY ORDERED** that Defendants' motion to dismiss [Doc. 38] is

**DENIED**.

/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 12th day of December, 2011.